IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | : | Case No: 21-cr-640 (TFH) |
|  | : |  |
|  | : |  |
|  | : | 18 U.S.C. §§ 231(a)(3), 1512(c)(2) |
|  | : |  |
| v. | : |  |
|  | : |  |
| GEORGE AMOS TENNEY III, | : |  |
|  | : |  |
| Defendant. | : |  |

## STATEMENT OF OFFENSE

Pursuant to Federal Rule of Criminal Procedure 11, the United States of America, by and through its attorney, the United States Attorney for the District of Columbia, and the defendant, George Amos TENNEY III, with the concurrence of his attorney, agree and stipulate to the below factual basis for the defendant's guilty plea—that is, if this case were to proceed to trial, the parties stipulate that the United States could prove the below facts beyond a reasonable doubt:

### The Attack at the U.S. Capitol on January 6, 2021

1.      The U.S. Capitol, which is located at First Street, SE, in Washington, D.C., is secured 24 hours a day by U.S. Capitol Police. Restrictions around the U.S. Capitol include permanent and temporary security barriers and posts manned by U.S. Capitol Police. Only authorized people with appropriate identification are allowed access inside the U.S. Capitol.

2.      On January 6, 2021, the exterior plaza of the U.S. Capitol was closed to members of the public.

3.       On January 6, 2021, a joint session of the United States Congress convened at the United States Capitol, which is located at First Street, SE, in Washington, D.C. During the joint session, elected members of the United States House of Representatives and the United States Senate were meeting in separate chambers of the United States Capitol to certify the vote count of the Electoral College of the 2020 Presidential Election, which had taken place on November 3, 2020. The joint session began at approximately 1:00 p.m. Shortly thereafter, by approximately 1:30 p.m., the House and Senate adjourned to separate chambers to resolve a particular objection. Vice President Mike Pence was present and presiding, first in the joint session, and then in the Senate chamber.

4.       As the proceedings continued in both the House and the Senate, and with Vice President Pence present and presiding over the Senate, a large crowd gathered outside the U.S. Capitol. As noted above, temporary and permanent barricades were in place around the exterior of the U.S. Capitol building, and U.S. Capitol Police were present and attempting to keep the crowd away from the Capitol building and the proceedings underway inside.

5.       At approximately 2:00 p.m., certain individuals in the crowd forced their way through, up, and over the barricades, and officers of the U.S. Capitol Police, and the crowd advanced to the exterior façade of the building. The crowd was not lawfully authorized to enter or remain in the building and, prior to entering the building, no members of the crowd submitted to security screenings or weapons checks by U.S. Capitol Police Officers or other authorized security officials.

6.       At such time, the certification proceedings were still underway and the exterior doors and windows of the U.S. Capitol were locked or otherwise secured. Members of the U.S. Capitol Police attempted to maintain order and keep the crowd from entering the Capitol;

however, shortly after 2:00 p.m., individuals in the crowd forced entry into the U.S. Capitol, including by breaking windows and by assaulting members of law enforcement, as others in the crowd encouraged and assisted those acts.  The riot resulted in substantial damage to the U.S. Capitol, requiring the expenditure of more than $1.4 million dollars for repairs.

7.      Shortly thereafter, at approximately 2:20 p.m., members of the United States House of Representatives and United States Senate, including the President of the Senate, Vice President Pence, were instructed to—and did—evacuate the chambers. Accordingly, all proceedings of the United States Congress, including the joint session, were effectively suspended until shortly after 8:00 p.m. the same day. In light of the dangerous circumstances caused by the unlawful entry to the U.S. Capitol, including the danger posed by individuals who had entered the U.S. Capitol without any security screening or weapons check, Congressional proceedings could not resume until after every unauthorized occupant had left the U.S. Capitol, and the building had been confirmed secured.  The proceedings resumed at approximately 8:00 p.m. after the building had been secured.  Vice President Pence remained in the United States Capitol from the time he was evacuated from the Senate Chamber until the session resumed.

### *TENNEY's Participation in the January 6, 2021, Capitol Riot*

8.      Following the November 3, 2020 presidential election, TENNEY exchanged Facebook messages discussing the election results and the January 6, 2021 certification of those results.  In December, 2020, he made plans to travel from South Carolina to Washington, D.C., to attend the rally in support of President Trump planned for January 6, 2021.

9.      On December 28, 2020, TENNEY sent a Facebook message that stated, "We need to talk about trip to DC. Y'all still going? I've been digging deep. Wanting to know exactly the what's when'd how's and where's. Why are we there? What are we doing? It's starting to look

like we may siege the capital building and congress if the electoral votes dont go right. There's a bunch going around, figured we should talk bout it. The people I'm going, we are forming plans for every scenario. What you think?"

10.     In a message sent December 29, 2020, TENNEY reported that he had listened to a podcast that said "Pence is a traitor and will betray the US on the 6th." Encouraging a friend to join him in Washington, D.C., TENNEY said, "When it's something I believe will save our country, I don't care if I sleep in a car at this point."

11.     TENNEY traveled from South Carolina to Washington, D.C. to attend the "Save America" rally on January 6, 2021. He met Darrell Youngers, and the two proceeded to the U.S. Capitol.

12.     When TENNEY and Youngers were together, before entering the Capitol, Youngers observed, "people have just stormed the front of the Capitol building, through tear gas…people aren't supposed to be up there, but they're there." Roadblocks on the roads leading to the Capitol were visible.

13.     TENNEY entered the U.S. Capitol Building through the Senate Wing Doors at approximately 2:19 p.m. Once inside the Capitol Building, an alarm was audible. Broken glass was on the floor. With TENNEY nearby, Youngers said, "We are inside the Capitol Building. It has been overrun…The Capitol Building has literally been broken in to…this is what a revolution motherfucking looks like."

14.     TENNEY and Youngers proceeded to the area inside the Rotunda Doors., known as the East Foyer, arriving at approximately 2:24 p.m. Rioters had amassed outside the Rotunda Doors, and were struggling against the police. TENNEY tried to force open the Rotunda Doors

to allow the rioters inside, and he had contact with multiple federal employees in the course of doing so.

15.     TENNEY succeeded in opening one of the doors.  A police officer outside tried to push them closed, and TENNEY resisted, pushing against the door to try to keep it open.

16.     An employee of the House Sergeant at Arms entered the East Foyer from the direction of the Rotunda and ran toward TENNEY.  He pushed TENNEY aside and tried to close the door.  TENNEY ran back to the door and grabbed the employee by the shoulder.  TENNEY and other rioters surrounded the employee, and a heated conversation began.  A rioter from outside the doors forced his way inside and pushed the employee of the House Sergeant at Arms back, away from the doors.  TENNEY continued to stand in the doorway.

17.     TENNEY then locked arms with U.S. Capitol Police Officer B.A., who was just outside the doors.  TENNEY and Officer B.A. moved inside the doors, toward the Rotunda. TENNEY pushed away Officer B.A.'s hand.

18.     In the Rotunda, TENNEY yelled, "Stand up, Patriots, stand up!"  TENNEY returned to the East Foyer less than 30 seconds later.  One of the Rotunda Doors was still open. TENNEY stood near the door and assisted rioters entering the building, patting them on the back and helping them move forward toward the Rotunda.  He said, "come on, Americans!"  When U.S. Capitol Police officer J.G. entered the East Foyer, TENNEY pushed him to the side.

19.     Officer B.A. moved into the doorway.  A rioter grabbed him from behind and threw him to the ground.  Another police officer began assisting Officer B.A.  TENNEY advanced toward Officer B.A., but Youngers kept TENNEY back.

20.     As the struggle over the doors continued, another U.S. Capitol Police officer moved into the doorway and turned his back to the crowd outside, as if to move them away from

the doors.  TENNEY walked into the doorway and had to be pulled back inside so that the Rotunda Doors could be closed to prevent more rioters from entering the building.

21.      TENNEY and Youngers retreated to the Rotunda and made their way to the area near Senate Wing Doors, exiting the Capitol Building through a window at approximately 2:32 p.m.

### *Elements of the Offense*

22.      TENNEY knowingly and voluntarily admits to all the elements of 18 U.S.C. §§ 231(a)(3) and 1512(c)(2).  Specifically, the defendant admits that:

23.      The defendant willfully and knowingly entered the U.S. Capitol Building knowing that that he did not have permission to do so. Defendant further admits that while inside the Capitol, he obstructed, influenced, and impeded an official proceeding, that is, a proceeding before Congress, specifically, Congress's certification of the Electoral College vote as set out in the Twelfth Amendment of the Constitution of the United States and 3 U.S.C. §§ 15-18.

24.      The defendant knowingly obstructed, impeded, or interfered with law enforcement officers while those officers were lawfully engaged in their official duties incident to a civil disorder.  Specifically, the defendant admits that he pushed against officers of the United States Capitol Police.  The defendant further admits that he knew at the time of his physical opposition to or interference with law enforcement officers, that the officers were lawfully engaged in the performance of their official duties incident to a civil disorder that was incident to the attack on the United States Capitol Building, also referred to as the "Capitol Riot."

25.    The Capitol Riot also adversely affected the United States Secret Service that was protecting Vice President Michael Pence, who was present inside the Capitol during the Capitol Riot.  The Capitol Riot also affected commerce within the District of Columbia.

Respectfully submitted,


MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052


By:    /s/ Alexis J. Loeb
Alexis J. Loeb
Assistant United States Attorney
Detailee

<u>DEFENDANT'S ACKNOWLEDGMENT</u>

I, George Amos Tenney III, have read this Statement of the Offense and have discussed it with my attorney. I fully understand this Statement of the Offense. I agree and acknowledge by my signature that this Statement of the Offense is true and accurate. I do this voluntarily and of my own free will. No threats have been made to me nor am I under the influence of anything that could impede my ability to understand this Statement of the Offense fully.

Date: _Co·21·22_

_____
George Amos Tenney III
Defendant

<u>ATTORNEY'S ACKNOWLEDGMENT</u>

I have read this Statement of the Offense and have reviewed it with my client fully. I concur in my client's desire to adopt this Statement of the Offense as true and accurate.

Date: _6 | 21 | 2022_

_____
James Loggins
Attorney for Defendant